ORRIN FULLER & others *vs.* CHICOPEE MANUFACTURING COMPANY.

Upon a complaint on the mill act, damages may be recovered for flooding a well and the cellar of a house on the complainant's land.

Upon a complaint on the mill act, damages cannot be recovered for injuries to land which is not itself overflowed, but is rendered less valuable for building purposes by noxious and offensive smells proceeding from the adjacent lands when the water caused by the dam to overflow them is occasionally drawn off.

COMPLAINT on the Rev. Sts. *c.* 116. At the trial before a sheriff's jury it appeared that a small portion of the land of the complainants was overflowed by the raising of the water by the dam; that upon the opposite side of the stream several acres of other lands in which these complainants had no interest were so far flowed, that in summer, when the water was high or the dam full, it was covered with water, but as the water was drawn off for use at the mills during the day a considerable surface of that land and a small strip of the complainants' land were uncovered and laid bare.

The complainants claimed increased damages, because by the raising of the dam a well on their land was injured by increasing the quantity and impairing the quality of the water therein, and the cellar of their dwelling-house was made wet, and in high water flooded; and were permitted, against the respondent's objection, to introduce evidence in support of both of these claims.

The complainants also " claimed, as a ground of increased damages, and produced the testimony of several physicians in support thereof, that by reason of the muddy and wet surface alternately covered and exposed, on both sides of the river, on land of the complainants, and on other land as well, there was occasionally a murky atmosphere and fogs, which tended to render the locality unhealthy and undesirable as a place of residence, thus reducing the value of the complainants' premises." To this claim and testimony in support of it, the respondents objected; but the objection was overruled.

The complainants contended " that as a part of their lands was overflowed or injured directly by the raising of the water, if, in consequence of the injury, and of the raising of the dam, they suffered any further damage in their whole property, beyond the direct injury to the land itself by the water, as by way of their lands generally becoming unsalable, or reduced in their marketable value, or undesirable for occupation or residence, or in any other respect, the jury might estimate such further loss or damage, and award such amount therefor in their verdict as they should think right." And the case was so given to the jury, against the objection of the respondents.

The jury returned a verdict for the complainants, which was accepted by the superior court, and the respondents appealed.

*J. Wells,* for the respondents.

*E. D. Beach,* for the complainants.

MERRICK, J. It is obvious that as an immediate consequence of the erection of a dam and raising a head of water, a landowner may sustain damage, beside the injury done to the land overflowed; as by obstructing his ways, cutting him off from convenient access to parts of his lands, disturbing the relation of one part to another. And it is possible that he may in like manner receive benefits from the same cause, that of raising and flowing the water, by the irrigating and fertilizing of an arid plain, giving him watering places in pastures where he had none before. The statute puts it as a case which may, but is not likely to, happen. " The jury, in estimating the damage to the land of the complainant, shall take into consideration any damage occasioned to his other land by the dam, as well as the damage occasioned to the land overflowed, and they shall also allow, by way of set-off, the benefit, if any, occasioned by such dam to the complainant, in relation to his said lands." Rev. Sts. *c.* 116, § 15. It was for injuries and benefits like these that this statute was intended to provide, when it declared, in § 4, that " any person whose land is overflowed or otherwise injured by such dam may obtain compensation therefor." The rule therefore to be derived from the statutes, construed together, seems to be, to estimate the pecuniary loss arising to the proprietor from

the direct injury done to his estate, taken as a whole, by flowing, deducting therefrom any benefit which may be done to the same estate by the same cause, namely, by flowing. *Palmer Co.* v. *Ferrill,* 17 Pick. 58.

The manifest object of this remedial statute is to secure to a land-owner, whose land has been flowed or directly damaged by water raised by a dam for mill purposes by another on his own land, a fair and adequate compensation for the damage arising directly from that cause. The law does not justify an allowance for remote, possible or speculative damages, or damage to any other subject than land, or by any other means than raising water by a dam for mill purposes. The rule admits all direct damage by raising water upon a complainant's land, or preventing all valuable growth, or by saturating it so as to render it unfit to produce good grass, by separating one part of the complainant's land from another, so as to render bridges or causeways necessary, or other direct damage. The jury were therefore properly allowed to consider the injury to the well and to the cellar of the dwelling-house on the premises, in their estimation of damages which the complainants were entitled to recover. But the complainants seek further to recover for damage done to other lands, uplands not reached or affected by the water raised by the dam, but in consequence of noxious and offensive smells, proceeding from the land flowed when not covered by water, by means of which such uplands are rendered less eligible and valuable as building lots. This is too remote, and not within the scope of the mill act. *Eames* v. *New England Worsted Co.* 11 Met. 570. *Verdict set aside.*